UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CMA CGM, S.A., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO.: 4:25-cv-01320 |
| | § | |
| GCC Supply & Trading LLC, | § | **IN ADMIRALTY** |
| | § | |
| *Defendant.* | § | |

**COMPLAINT**

COMES NOW plaintiff CMA CGM, S.A. ("CMA CGM" or "Plaintiff"), by and through its attorneys, Blank Rome LLP, and files its complaint against GCC Supply & Trading LLC ("GCC"), and would respectfully show as follows:

**JURISDICTION AND VENUE**

1.  This is an action arising out of the manufacture, sale, supply, and delivery of marine fuel at the Port of Houston by GCC to CMA CGM, the purchaser and user of the marine fuel.

2.  This is a matter within the subject matter jurisdiction of the Court within the meaning of 28 U.S.C. § 1332, in that it is a dispute between CMA CGM, a company organized and existing under the laws of a foreign country, and GCC, a Texas corporation headquartered in Texas, for an amount in controversy exceeding the sum of $75,000, exclusive of interest and costs.

3.  This Court also has, as an independent basis of jurisdiction over the subject matter of this action, admiralty and maritime jurisdiction over this matter pursuant to 28 U.S.C. § 1333, as Plaintiff asserts claims for maritime tort and breach of a maritime contract arising from the manufacture, sale, and supply of marine fuel to Plaintiff for consumption by the vessels owned or operated by Plaintiff. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over

Plaintiff's non-maritime claims to the extent that they are so related to the maritime claims that they form part of the same case or controversy.

4. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within the Southern District of Texas.

## THE PARTIES

5. CMA CGM is a company organized under the laws of France with offices around the world. CMA CGM was, at all relevant times, the owner of the M/V CMA CGM NAVEGANTES, M/V CMA CGM BEIRA, M/V CMA CGM PEMBA, M/V CMA CGM OTELLO, M/V CMA CGM PARANAGUA, M/V CMA CGM GEORGE SAND (collectively the "Owned Vessels"), and charterer of M/V CARDIFF, M/V AS SVENJA, M/V CMA CGM SAMSON, M/V HANS SCHULTE, M/V SWANSEA, M/V CMA CGM BERILOZ, M/V PERITO MORENO (collectively the "Chartered Vessels," and together with the Owned Vessels, the "Vessels").

6. Upon information and belief, GCC is a company organized under the laws of Texas with a principal place of business at 3773 Richmond Avenue, Suite 250, Houston, TX 77046.

## JURY TRIAL

7. Plaintiff demands a jury trial.

## FACTUAL BACKGROUND

8. At all relevant times, Plaintiff was the owner or charterer of the Vessels.

9. At all relevant times, GCC was a manufacturer, seller, and supplier of marine fuel, with operations worldwide and in Texas.

10. Between March and June 2023, GCC sold to CGA CGM, and supplied, and delivered approximately 33,628 MT of very low sulfur fuel oil ("VLSFO") to the Vessels.

11. Shortly after the fuel was supplied, the Vessels encountered significant operational issues, including but not limited to fuel pump seizures, ICU leakages, loss of engine power and propulsion in some cases leading to blackouts. CMA CGM put GCC on notice of these issues as soon as they became known.

12. The marine fuel manufactured, sold, supplied, and delivered to CMA CGM and its Vessels by GCC was specifically made for and known to be consumed by vessels such as the Vessels.

13. GCC either had actual knowledge, or should have known, that the marine fuel product it manufactured and sold between March and June 2023 was contaminated, defective, off-specification, unfit for consumption and would cause physical harm if consumed by vessels. Despite this, GCC never notified or warned Plaintiff of the known defects in its product.

## COUNT I – BREACH OF CONTRACT

14. Plaintiff CMA CGM repeats and realleges each and every allegation set forth in the paragraphs 1-13 above as if fully set forth herein.

15. GCC and CMA CGM formed a contract for the sale of the marine fuel.

16. GCC breached that contract by delivering to the Vessels marine fuel that was contaminated, defective, and off-specification and unsuitable for use.

17. As a direct result of GCC's breach of contract, the Vessels suffered physical damage to their fuel tanks, fuel purifiers, fuel systems, and their engines and engine components, causing CMA CGM damages in an amount to be finally determined by this Court.

18. As a direct result of GCC's breach of contract, the Vessels' operations were disrupted and delayed, causing increased operational costs, lost opportunities, demurrage, and further causing CMA CGM damages in an amount to be finally determined by this Court.

19. As a direct result of GCC's breach of contract, Plaintiff was damaged in a sum of not less than **$5,057,902.79**.

## COUNT II – BREACH OF WARRANTIES

20. Plaintiff CMA CGM repeats and realleges each and every allegation set forth in the paragraphs 1-19 above as if fully set forth herein.

21. GCC specifically and expressly warranted that the marine fuel would meet the standard specifications for marine fuel set forth in ISO 8217.2010(E) as is customary in the industry.

22. GCC further expressly represented and warranted that the marine fuel was compliant with MARPOL Annex VI Section 18.1.

23. The marine fuel GCC sold to CMA CGM and delivered to the Vessels was off-specification and dangerous to use. The marine fuel did not meet the standards and specifications for marine fuel set forth in ISO 8217.2010(E) or MARPOL Annex VI.

24. GCC breached the warranties by delivering to the Vessels marine fuel that was contaminated, defective, and off-specification and unsuitable for use.

25. As a direct result of GCC's breach of warranty, the Vessels suffered physical damage to their fuel tanks, fuel purifiers, fuel systems, and their engines and engine components, causing CMA CGM damages in an amount to be finally determined by this Court.

26. As a direct result of GCC's breach of warranty, the Vessels' operations were disrupted and delayed, causing increased operational costs, lost opportunities, demurrage, and further causing CMA CGM damages in an amount to be finally determined by this Court.

27. As a direct result of GCC's breach of warranty, Plaintiff was damaged in a sum of not less than **$5,057,902.79**.

## COUNT III – NEGLIGENCE

28. Plaintiff CMA CGM repeats and realleges each and every allegation set forth in the paragraphs 1-27 above as if fully set forth herein.

29. As a physical supplier of marine fuel, GCC had a duty to provide to the Vessels marine fuel that was suitable and safe for use, and not off-specification or contaminated.

30. GCC breached this duty by failing to employ reasonable practices and policies for testing and screening its product for harmful contaminants or components that could cause harm to its intended customers. More specifically, GCC failed to properly test and check its marine fuel products and/or feedstocks, and any and all components, blend stocks, and other chemicals that GCC added to its marine fuel products.

31. As a direct result of GCC's breach of duty, the Vessels suffered physical damage to their fuel tanks, fuel systems, and to their engines and engine components, causing Plaintiff damages in an amount that may be finally determined by this Court.

32. As a direct result of GCC's breach of duty, the Vessels' operations were disrupted and delayed, causing increased operational costs, lost opportunities, demurrage, and further causing CMA CGM damages in an amount that may be finally determined by this Court.

33. As a direct result of the Vessels using the inherently defective fuel that was negligently supplied by GCC, Plaintiff was damaged in a sum of not less than **$5,057,902.79**.

## COUNT IV – PRODUCT LIABILITY

34.     Plaintiff CMA CGM repeats and realleges each and every allegation set forth in the paragraphs 1-33 above as if fully set forth herein.

35.     GCC is the manufacturer and seller of marine fuel, and specifically the marine fuel that was sold to CMA CGM and supplied to the Vessels and that are the subject of this complaint.

36.     GCC manufactured, sold, and provided to the market, including to the Vessels, marine fuel that was inherently defective, off-spec, contaminated, unsuitable, unsafe, and did not conform with applicable specifications and regulations.

37.     As a direct result of the Vessels using the inherently defective fuel, the Vessels suffered physical damage to their fuel tanks, fuel systems, and to their engines and engine components, causing CMA CGM damages in an amount that may be finally determined by this Court.

38.     As a direct result of the Vessels using the inherently defective fuel, the Vessels' operations were disrupted and delayed, causing increased operational costs, lost opportunities, demurrage, and further causing CMA CGM damages in an amount that may be finally determined by this Court.

39.     As a direct result of the Vessels using the inherently defective fuel, Plaintiff was damaged in a sum of not less than **$5,057,902.79**.

## PRAYER FOR RELIEF

Wherefore, Plaintiff CMA CGM demands judgment against Defendant GCC as follows:

   i.   Enter judgment in favor of Plaintiff CMA CGM against Defendant GCC for damages as may be finally determined by this Court, together with interest and reasonable attorneys' fees and costs; and

ii. That the Court grant such other and further relief as may be just and proper in the circumstances.

Dated: March 20, 2025
Houston, Texas

Respectfully submitted,

**BLANK ROME LLP**

*/s/ Keith B. Letourneau*
Keith B. Letourneau, *Attorney-in-Charge*
State Bar No. 00795893
G. Evan Spencer
State Bar No. 24113493
Douglas Shoemaker
State Bar No. 00788406
717 Texas Avenue, Suite 1400
Houston, Texas 77002
(713) 632-8609 Telephone
(713) 228-6605 Facsimile
Email: keith.letourneau@blankrome.com
Email: evan.spencer@blankrome.com
Email: douglas.shoemaker@blankrome.com

***ATTORNEYS FOR PLAINTIFF***
***CMA CGM, S.A.***