# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| **CMA CGM, S.A.,** | **CIVIL ACTION NO: 4:25-cv-01320** |
| *Plaintiff,* | |
| | **Admiralty** |
| **v.** | |
| **GCC Supply & Trading LLC,** | |
| *Defendant.* | |

## GCC SUPPLY & TRADING LLC'S MOTION TO COMPEL ARBITRATION AND DISMISS THIS ACTION OR ALTERNATIVELY STAY THESE PROCEEDINGS

MAY IT PLEASE THE COURT:

While as complained this an action arising out of the 2023 sale, supply, and delivery of marine fuel[1] pursuant to the terms of a contract formed between GCC Supply and Trading LLC ("GCC" or "Defendant") and CMA CGM, S.A. ("CMA CGM" or "Plaintiff"),[2] that contract—the BIMCO Bunker Terms 2018—"sets out the terms of a legally binding agreement" between[3] the parties, and mandates that "[a]ny dispute arising out of or in connection with the Contract shall be referred to three (3) persons at New York [SMA Arbitration]."[4]

As a result, and for the reasons set forth more fully below, GCC respectfully moves this Honorable Court to (1) compel CMA CGM to New York SMA Arbitration, and (2) dismiss this action,[5] or at the very least, (3) stay all proceedings in this action, in accordance with the provisions

---

[1] Rec. Doc. 1, ¶1.
[2] Rec. Doc. 1, ¶15.
[3] Exhibit "A", The GCC CMA CGM Amended BIMCO Bunker Terms 2018, p.1.
[4] Exhibit "A", The GCC CMA CGM Amended BIMCO Bunker Terms 2018, p.5; *see also* at p.2, "GOVERNING LAW AND JURISDICTION – as set forth in the Bunker Terms 2018, U.S. General Maritime Law/New York law, New York SMA arbitration." SMA stands for the Society of Maritime Arbitrators and its rules may be found at the following publicly available website: https://smany.org.
[5] *Murchison Cap. Partners, L.P. v. Nuance Commc'ns, Inc.*, 625 F. App'x 617, 627 (5th Cir. 2015).

of Section 3 of the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*., and on the grounds that CMA CGM must arbitrate its purported claims against GCC in New York SMA Arbitration if it wishes to continue pursuing the same.

In the alternative only, and to the extent CMA CGM takes the position that the BIMCO Bunker Terms 2018 terms do not apply to this dispute, which is denied, then the GCC Supply & Trading General Terms and Conditions ("<u>GCC Terms</u>")[6] would apply to the marine fuel sales at issue, and while those terms would allow disputes arising from the purchase and sale of marine fuel to be litigated in this district, those terms also provide for a deadline of thirty (30) days for claims as to quality and an overall legal proceeding deadline of twelve (12) months, such that CMA CGM's allegations and the above-captioned civil action are time barred and should be dismissed for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

---

[6] Exhibit "B", GCC Supply & Trading General Terms and Conditions Terms.

## <u>TABLE OF CONTENTS</u>

Table of Contents……………………………………………..……………………..…..3

Exhibits……………………………………………………………………………….....4

Table of Authorities……………………………………………..…………….…….…..5

Factual Background……………………………………………………………………7

Legal Argument……………………………………………………………….…..…….12

    1.  The Court should compel New York SMA Arbitration…………………...…………..13

    2.  Upon compelling arbitration, this Court should dismiss this action…….………...……17

    3.  Alternatively, upon compelling arbitration,
        the Court should stay all proceedings in this action………………….…….……….……17

    4.  Alternatively, the Court should dismiss this action as time-barred……….…….……….18

Conclusion……………………………………………………………………..…....…..20

## EXHIBITS

| A | GCC-CMA CGM Amended BIMCO Bunker Terms |
|---|---|
| B | GCC Supply & Trading General Terms and Conditions |
| C | E-mail re: "GCC / CMA CGM - BIMCO bunker terms" dated 8 March 2023 |
| D | E-mail re: "GCC / CMA CGM - BIMCO bunker terms" dated 2 June 2023 |
| E | E-mail re: "Contract Confirmation 4071 - GCC SUPPLY and TRADING, LLC" |
| F | E-mail re: "Contract Confirmation 4192 - GCC SUPPLY and TRADING, LLC" |
| G | E-mail re: "Contract Confirmation 4194 - GCC SUPPLY and TRADING, LLC" |
| H | E-mail re: "Contract Confirmation 4196 - GCC SUPPLY and TRADING, LLC" |
| I | E-mail re: "HOUSTON – March 2023 – prenomination list" |
| J | E-mail re: "HOUSTON – April 2023 – prenomination list / GCC" |
| K | E-mail re: "HOUSTON – May 2023 – prenomination list / GCC" |
| L | E-mail re: "HOUSTON – June 2023 – prenomination list / GCC" |
| M | E-mail re: "CMA CGM issues with GCC / Houston deliveries from March to June 2023" |
| N | E-mail Exchange re: "HOUSTON – TENDER April 2023 & co" |
| O | GCC Trade Confirmation |

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abugeith v. Flowers Foods, Inc.,* No. 17-2934,
 2018 WL 2222191 (S.D. Tex. May 15, 2018)……………………………….………...17

*Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161 (5th Cir. 1992)……………………..………18
.
*Allied-Bruce Terminix Cas. v. Dodson*, 513 U.S. 265 (1995)…………………………….……....14

*Armstrong v. Assocs. Intern. Holdings Corp.*, 242 F. App'x 955 (5th Cir. 2007)……..……………17

*Besser v. Weyler*, 284 F.3d 665 (5th Cir. 2002)………………………………………….………16

*Baugh v. A. H. D. Houston, Inc.,* No. 20-0291,
 2020 WL 2771251 (S.D. Tex. May 28, 2020)…………………………………….………12, 19

*Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.*, 866 F.3d 709 (5th Cir. 2017)……………..………16

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006)……..……………………..………12, 19

*CompuCredit Corp. v. Greenwood*, 565 U.S. 95 (2012)……………………………….……….…...14

*Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213 (1985)………………………………….……….…14

*Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327 (5th Cir. 2004)……………..……...16

*Hearthwood II Condo Owners Ass'n, Inc. v.*
 *Certain Underwriters at Lloyd's, London*, No. 23-454,
 2023 WL 6371031 (S.D. Tex. June 27, 2023)………………………………………….……...17

*Hornbeck Offshore Corp. v. Coastal Carriers Corp.*, 981 F.2d 752 (5th Cir. 1993)……..…………18

*Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898 (5th Cir. 2005)…………….…………16

*Mem'l Hermann Health Sys. v. Blue Cross Blue Shield of Texas*,
 No. 17-2661, 2017 WL 5593523, at *4 (S.D. Tex. Nov. 17, 2017)………………….………17

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985)…………….....…15

*Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)…..…………...….…13, 14

*Murchison Cap. Partners, L.P. v. Nuance Commc'ns, Inc.*,
 625 F. App'x 617 (5th Cir. 2015)………...................................................................................1

*Order of United Commercial Travelers of Am. v. Wolfe*, 331 U.S. 586 (1947)……………..……18

*Port Cargo Serv., LLC v. Certain Underwriters at Lloyd's, London*,
  No. 18-6192, 2018 WL 4042874 (E.D. La., August 24, 2018)...............................14

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)..........................12, 19

*Sedco, Inc. v. Petroleos Mexicanos Mexican National Oil Co.*,
  767 F.2d 1140 (5th Cir.1985)...........................................................................16

*Stringham v. Titsworth*, 88 F. App'x 7 (5th Cir. 2004)..............................................19

*Texaco Exploration & Prod. Co. v. AmClyde Engineered Prods. Co.*,
  243 F.3d 906 (5th Cir. 2001)......................................................................…....14

*Vincent v. Comerica Bank*, No. 05-2302,
  2006 WL 1295494 (S.D. Tex. May 10, 2006)...................................................19

*Waste Mgmt., Inc. v. Residuous Industriales Muliquim, S.A.*,
  372 F.3d 339 (5th Cir. 2004)..........................................................................18

**Statutes**

9 U.S.C. §2.............................................................................................…....14

9 U.S.C. §3...............................................................................…....…...........2, 17, 18

9 U.S.C. §201..........................................................................................…....15

9 U.S.C. §202............................................................................................…....15

9 U.S.C. §206...........................................................................................…....17

9 U.S.C. §208...........................................................................................…....18

## **FACTUAL BACKGROUND**

CMA CGM is a French shipowner and sophisticated purchaser of marine fuel who has historically purchased marine fuel from GCC for its owned and chartered vessels.[7] At CMA CGM's request the parties agreed that those purchases would be governed by standardized contractual terms for the purchase and supply of marine fuels to ships developed by the Baltic and International Maritime Council ("BIMCO"). As the Court may know, BIMCO utilizes recognized and accepted shipping industry standards to develop contract frameworks with sample clauses, including clauses as to dispute resolution, that parties can customize and adapt to their specific needs. Here, CMA CGM relayed to GCC that arbitration was very important to it, and on 8 March 2023 New York SMA Arbitration as to any dispute was subsequently agreed and "accepted" (the "New York SMA Arbitration Agreement").[8]

Thereafter, on 2 June 2023, a "complete version" of the BIMCO Bunker Terms 2018 "as per discussions" was sent from CMA CGM to GCC,[9] along with a cover letter from "Farid Trad, VP Bunkering & Energy Transition, duly authorized for and on behalf of CMA CGM S.A.", setting out the "legally binding agreement" between CMA CGM and GCC and recapping the prevailing terms and conditions agreed between the parties. This expressly included, "GOVERNING LAW AND JURISDICTION – as set forth in the Bunker Terms 2018, U.S. General Maritime Law/New York law, New York SMA arbitration."[10] That version was agreed and executed by GCC on 28 June 2023.[11]

---

[7] Rec. Doc., 1, ¶__.
[8] Exhibit "C", E-mail re: "GCC / CMA CGM - BIMCO bunker terms" from S. Galliano to F. Ray dated 8 March 2023.
[9] Exhibit "D", E-mail re: "GCC / CMA CGM - BIMCO bunker terms" from S. Galliano to F. Ray dated 2 June 2023.
[10] Exhibit "A", The GCC CMA CGM Amended BIMCO Bunker Terms 2018.
[11] *Id*. at p.2.

During the course of these negotiations, CMA CGM was continuously purchasing marine fuel from GCC. CMA CGM would issue quarterly Contract Confirmations[12] to GCC "recapping" the parties' agreement for terms applicable to marine fuel to be purchased and supplied for each month in the following quarter. Then, in advance of each month, CMA CGM would issue prenomination lists to GCC noting its current vessel call schedule and estimations for marine fuel purchase quantities, and referencing the application of the previously issued Contract Confirmations.[13] In accordance with these confirmations and pre-nominations, CMA CGM purchased marine fuel from GCC between March and June 2023, and claims it was supplied with defective marine fuel that allegedly caused damage to the following owned and operated vessels:[14]

**CMA CGM Contract Confirmation 4071 – "Wed 01/03/2023 upto Fri 31/03/2023"**

1.    M/V CMA CGM GEORGE SAND, fuel received 16 March 2023
2.    M/V CMA CGM BEIRA, fuel received 21 March 2023
3.    M/V CMA CGM NAVEGANTES, fuel received 23 March 2023
4.    M/V AS SVENJA, fuel received 23 March 2023
5.    M/V CMA CGM PARANAGUA, fuel received 28 March 2023

"**+ GCC Last proposed Bimco adjusted terms / once a new agreement is in place it will apply**"[15]

**CMA CGM Contract Confirmation 4192 – "Sat 01/04/2023 upto Sun 30/04/2023"**

6.    M/V SWANSEA, fuel received 15 April 2023
7.    M/V CMA CGM SAMSON, fuel received 16 April 2023

---

[12] Exhibit "E", E-mail re: "Contract Confirmation 4071 - GCC SUPPLY and TRADING, LLC" dated 10 December 2022; Exhibit "F", E-mail re: "Contract Confirmation 4192 - GCC SUPPLY and TRADING, LLC" dated 23 March 2023; Exhibit "G", E-mail re: "Contract Confirmation 4194 - GCC SUPPLY and TRADING, LLC" dated 23 March 2023; Exhibit "H", E-mail re: "Contract Confirmation 4196 - GCC SUPPLY and TRADING, LLC" dated 23 March 2023.

[13] Exhibit "I", E-mail re: HOUSTON – March 2023 – prenomination list from S. Galliano to F. Ray dated 20 February 2023; Exhibit "J", E-mail re: HOUSTON – April 2023 – prenomination list / GCC from S. Galliano to F. Ray dated 23 March 2023; Exhibit "K", E-mail re: HOUSTON – May 2023 – prenomination list / GCC from S. Galliano to F. Ray dated 24 April 2023; Exhibit "L", E-mail re: HOUSTON – June 2023 – prenomination list / GCC from S. Galliano to F. Ray dated 25 May 2023

[14] Rec. Doc. 1, ¶5; *see also* Exhibit "M", E-mail re: "CMA CGM issues with GCC / Houston deliveries from March to June 2023" from C. Lesnard to Z. Stansbury dated 21 July 2023, for dates marine fuel is said to have received by each vessel.

[15] Exhibit "E", E-mail re: "Contract Confirmation 4071 - GCC SUPPLY and TRADING, LLC" dated 10 December 2022 (emphasis in the original).

8.    M/V HANS SCHULTE, fuel received 17 April 2023

"**+Terms : the one we are currently finalizing would apply to this tender.**"[16]

**CMA CGM Contract Confirmation 4194 – "Mon 01/05/2023 upto Wed 31/05/2023"**

9.    M/V CARDIFF, fuel received 28 May 2023

"**+Terms : the one we are currently finalizing would apply to this tender.**"[17]

**CMA CGM Contract Confirmation 4196 – "Thu 01/06/2023 upto Fri 30/06/2023"**

10.    M/V CMA CGM OTELLO, fuel received 13 June 2023
11.    M/V CMA CGM PEMBA, fuel received 14 June 2023
12.    M/V CMA CGM BERILOZ, fuel received 19 June 2023
13.    M/V PERITO MORENO, fuel received 22 June 2023

"**+Terms : the one we are currently finalizing would apply to this tender.**"[18]

As indicated, the above-captioned civil action arises from CMA CGM's claims related to the foregoing transactions. However, as CMA CGM is well aware and has acknowledged, those purchases were and are governed by BIMCO Bunker Terms 2018—such that it necessarily follows that those claims are subject to the parties' agreement for New York SMA Arbitration.

Indeed, CMA CGM confirmed with each of its Contract Confirmations during that time frame that transactions would be governed by the "GCC Last proposed Bimco adjusted terms / once a new agreement is in place it will apply"[19], and the parties also agreed via e-mail exchange in March 2023 that the terms of the BIMCO they were then "currently finalizing" would apply to the purchases and sales occurring during the pendency of the negotiations.[20]  Thereafter, CMA

---

[16] Exhibit "F", E-mail re: "Contract Confirmation 4192 - GCC SUPPLY and TRADING, LLC" dated 23 March 2023 (emphasis in the original).
[17] Exhibit "G", E-mail re: "Contract Confirmation 4194 - GCC SUPPLY and TRADING, LLC" dated 23 March 2023 (emphasis in the original).
[18] Exhibit "H", E-mail re: "Contract Confirmation 4196 - GCC SUPPLY and TRADING, LLC" dated 23 March 2023 (emphasis in the original).
[19] Exhibit "E", E-mail re: "Contract Confirmation 4071 - GCC SUPPLY and TRADING, LLC" dated 10 December 2022.
[20] Exhibit "N", E-mail re: "HOUSTON – TENDER April 2023 & co" between S. Galliano and F. Ray dated 17-23 March 2023.

CGM's Contract Confirmations confirmed and reiterated in bold that those transactions were governed by **"+Terms: the one we are currently finalizing would apply to this tender."**[21]

Later in July 2023, when CMA CGM purported experiencing issues with marine fuel purchased from GCC between March and June 2023, CMA CGM e-mailed GCC relaying those issues, and specifically referencing certain clauses of the BIMCO Bunker Terms 2018 that it alleged GCC breached. CMA CGM also therein acknowledged that its allegations would be governed by and in some instances time barred by the BIMCO Bunker Terms 2018, which dictates a quality claims deadline of thirty (30) days.[22] Specifically, CMA CGM recognized that its claims related to the M/V CMA CGM GEORGE SAND, M/V CMA CGM BEIRA, M/V CMA CGM NAVEGANTES, M/V AS SVENJA, M/V CMA CGM PARANAGUA, M/V CMA CGM SAMSON, M/V HANS SCHULTE, and , M/V CARDIFF were time barred.[23]

Nevertheless, and despite its own proposition of and clear agreement to the BIMCO Bunker Terms 2018, and the New York SMA Arbitration Agreement contained therein, CMA CGM initiated this civil action on 20 March 2025. For these reasons and legal bases below, CMA CGM should be compelled to arbitration, and the above-captioned civil action should dismissed or these proceedings should be stayed pending arbitration.

In the alternative only, and to the extent CMA CGM takes the opposing position that the BIMCO Bunker Terms 2018 do not apply to this dispute, which is denied (and should regardless

---

[21] Exhibit "F" – "H", Contract Confirmations (emphasis in originals).
[22] Exhibit "M", E-mail re: "CMA CGM issues with GCC / Houston deliveries from March to June 2023" from C. Lesnard to Z. Stansbury and F. Ray dated 21 July 2023. *See also* Exhibit "A", The GCC CMA CGM Amended BIMCO Bunker Terms 2018, §9(b)(i).
[23] Exhibit "M", E-mail re: CMA CGM issues with GCC / Houston deliveries from March to June 2023 from C. Lesnard to Z. Stansbury dated 21 July 2023.

be a question for the New York SMA Arbitration panel if at all), it does not follow that the parties' transactions were without agreed terms.

The BIMCO Bunker Terms 2018 dictates that "[t]he written terms of the Contract comprise the entire agreement between the Buyers and the Sellers in relation to the sale and purchase of the Marine Fuels and supersede all previous agreements."[24] However, should CMA CGM argue that those terms are inapplicable here, then it would necessarily follow that the GCC Supply & Trading General Terms and Conditions should apply. The GCC Terms are made readily available to all GCC customers and referenced in the Trade Confirmations issued by GCC to CMA CGM for each and every vessel it claims sustained damage as a result of the marine fuel received between March and June 2023.[25]

To be clear, GCC's Trade Confirmations for the sales to CMA CGM provide in bold as follows:

> **The sale and delivery of the marine fuels described above are subject to the GCC Supply & Trading, LLC's Terms and Conditions for the Sale of Marine Bunkers. The acceptance of the Bunkers by the vessel named above shall be deemed to constitute acceptance of the said general terms applicable to you as "Buyer" and to GCC Supply and Trading, LLC as "Seller".**
>
> **The fixed terms and conditions are well known to you and remain in your possession. If this is not the case, the terms can be found under the web address: http:www.gulfcoastcommodities.com[26]**

And, a review of those GCC Terms makes clear that "any and all claims concerning the quality of the Bunkers delivered or time consumed for the entire operation, shall be submitted to the Seller in writing within thirty (30) days after delivery",[27] and that "any and all claims of the Buyer shall be time barred unless legal proceedings have been commenced at the competent court set forth in

---

[24] Exhibit "A", The GCC CMA CGM Amended BIMCO Bunker Terms 2018, §26(a).
[25] *See e.g.,* Exhibit "O", GCC Trade Confirmation.
[26] *Id*.
[27] Exhibit "B", GCC Terms, §11.2.

Section 16 hereof and served within 12 (twelve) months from the date of delivery of the Bunkers."[28]

Here, by CMA CGM's own acknowledgement certain of its claims were time barred before notice was ever provided to GCC, but even if notice had been timely given, which is denied, by CMA CGM's own pleadings, the marine fuel at issue was purchased and delivered between March and June 2023, such that the above-captioned civil action was time barred well before the instant Complaint was ever filed on 20 March 2025, and CMA CGM has therefore failed to state a claim upon which relief can be granted.

## **LEGAL ARGUMENT**

Based on the foregoing facts and for the legal reasons below, CMA CGM should be compelled to arbitration under the agreed BIMCO Bunker Terms 2018 and the New York SMA Arbitration Agreement contained therein, and the above-captioned civil action should dismissed for improper venue pursuant Rule 12(b)(3) or for lack of subject matter jurisdiction under Rule 12(b)(1) or these proceedings should be stayed pending arbitration in accordance with this Court's discretion under 9 U.S.C. §3 of the Federal Arbitration Act.

In the alternative, and to the extent only CMA CGM takes the opposing position that the BIMCO Bunker Terms 2018 do not apply to this dispute, such an argument is denied by GCC, but should be a question for the New York SMA Arbitration panel as dictated by the United States Supreme Court.[29] However, even if such an argument were considered and accepted by this Court,

---

[28] *Id*. at §11.5.

[29] "Unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 446, 126 S. Ct. 1204, 1209, 163 L. Ed. 2d 1038 (2006) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967)); cited with approval by *Baugh v. A. H. D. Houston, Inc.*, No. 20-0291, 2020 WL 2771251, at *3 (S.D. Tex. May 28, 2020) (Lake, J.) ("a challenge to an agreement containing an arbitration clause, as opposed to a challenge to the arbitration clause itself, is for the arbitrator to decide").

CMA CGM's claims would be governed and time barred by the GCC Supply & Trading, LLC's Terms and Conditions for the Sale of Marine Bunkers, such that this action should be dismissed for failure to state a claim upon with relief can be granted under Rule 12(b)(6).

**1.  <u>The Court should compel New York SMA Arbitration</u>**

As detailed above, the BIMCO Bunker Terms 2018 executed by and between CMA CGM and GCC contains an arbitration clause, which states as follows:

> The Contract shall be governed by US maritime law or, if the Contract is not a maritime contract under US law, by the laws of the State of New York. Any dispute arising out of or in connection with the Contract shall be referred to three (3) persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen. The decision of the arbitrators or any two of them shall be final, and for the purposes of enforcing any award, judgment may be entered on an award by any court of competent jurisdiction. The proceedings shall be conducted in accordance with the SMA Rules current as of the date of the Contract.[30]

CMA CGM's claims in this action arise out of or in connection with purchase and sale of marine fuel by and between CMA CGM and GCC under the BIMCO Bunker Terms 2018, such that the claims are covered by the parties' agreement to arbitrate. And, as this dispute involves international commerce between citizens of the United States, GCC, and citizens of France, CMA CGM, the New York SMA Arbitration Agreement is valid and enforceable under the Federal Arbitration Act ("<u>FAA</u>") and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("<u>Convention</u>"). For this reason, the Court should compel arbitration.

---

[30] Exhibit "A", The GCC CMA CGM Amended BIMCO Bunker Terms 2018, §24(b).

There is a strong policy in favor of enforcing arbitration agreements.[31] In fact, Congress codified this presumption in the FAA, mandating that arbitration provisions "shall be valid, irrevocable, and enforceable",[32] and its language is unambiguous:

> "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration . . . the court . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."[33]

The FAA was enacted by Congress to "ensure judicial enforcement of privately made agreements to arbitrate."[34] To this end, the FAA applies to all matters involving interstate commerce and was intended "to exercise Congress' commerce power to the full."[35] Here, the parties' New York SMA Arbitration Agreement is enforceable under the FAA, because this matter involves a contract between Texas citizens and citizens of France. That is interstate commerce.

While the codifications of the FAA establish "a liberal federal policy favoring arbitration agreements."[36] This policy is even stronger in the international context. In particular, the United States is a party to the Convention, which is an international treaty that guarantees citizens of signatory countries the right to enforce arbitration agreements.[37] Its language makes its purpose clear, providing:

> 1. Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.

---

[31] *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985).
[32] 9 U.S.C. § 2; see also *Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).
[33] 9 U.S.C. §3.
[34] *Dean Witter*, 470 U.S. at 217-20.
[35] *Allied-Bruce Terminix Cas. v. Dodson*, 513 U.S. 265, 277 (1995).
[36] *CompuCredit Corp. v. Greenwood*, 565 U.S. 95 (2012) (quoting *Moses H. Cone Mem'l. Hosp.*, 460 U.S. at 24); see also *Texaco Exploration & Prod. Co. v. AmClyde Engineered Prods. Co.*, 243 F.3d 906, 909 (5th Cir. 2001)
[37] *See* Convention Done at New York June 10, 1958; T.I.A.S. No. 6997 (U.S. Treaty Dec. 29, 1970) ("Convention"); *Port Cargo Serv., LLC v. Certain Underwriters at Lloyd's, London*, No. 18-6192, 2018 WL 4042874 at *3 (E.D. La., August 24, 2018).

…

3. The court of a Contracting State, when seized of an action in a matter in respect
of which the parties have made an agreement within the meaning of this article,
shall, at the request of one of the parties, refer the parties to arbitration, unless it
finds that the said agreement is null and void, inoperative or incapable of being
performed.[38]

The United States and the France are both signatory countries.[39]

In order to ensure the Convention was enforceable to its fullest extent, Congress passed
Chapter 2 of the Federal Arbitration Act to address some possible jurisdictional and venue issues.[40]
Along with giving federal courts exclusive jurisdiction over disputes arising under the Convention,
the Chapter reiterates the strong presumption in favor of arbitration, stating that "the [Convention]
shall be enforced in United States courts," unless the provision has "no reasonable relation with
one or more foreign states."[41]

Courts routinely refer cases to arbitration when they fall under the Convention, explaining
that the strong policy in favor of arbitration "applies with special force in the field of international
commerce."[42] The United States Supreme Court has explained that "concerns of international
comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need
of the international commercial system for predictability in the resolution of disputes require that
we enforce the parties' agreement, even assuming that a contrary result would be forthcoming in
a domestic context."[43]

[38] *Id.*
[39] 21 U.S.T. 2517; UNITED NATIONS COMMISSION ON INTERNATIONAL TRADE LAW, Status:
Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York, 1958),
https://uncitral.un.org/en/texts/arbitration/conventions/foreign_arbitral_awards/status2.
[40] 9 U.S.C. §§ 201, *et seq.*
[41] *Id.* §§ 201-202.
[42] *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985).
[43] *Id.*

15

Thus, when reviewing any arbitration provision, the Court should begin with the presumption that it is enforceable.

Here, the Convention requires arbitration. The Fifth Circuit has made it clear that, "[t]he 'Convention contemplates a very limited inquiry by the courts.' Resolving the question of whether [an] agreement falls under the Convention will ordinarily prove quick and easy, without requiring too much merits-like investigation by the district court."[44] Specifically, courts generally enforce arbitration provisions under the Convention if: (1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation, like the United States; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen or the commercial relationship has a reasonable relation to a foreign state.[45] "Once these requirements are met, the Convention requires the district court to order arbitration, 'unless it finds that the said agreement is null and void, inoperative or incapable of being performed.'"[46]

In this case, all four requirements are met. First, the applicable BIMCO Bunker Terms 2018 provide a written agreement to arbitrate "[a]ny dispute arising out of or in connection with the Contract."[47] Second, the arbitration provision provides for arbitration in the United States, which is a signatory nation.[48] Third, it is indisputable that the BIMCO Bunker Terms 2018 arises out of a commercial relationship between CMA CGM and GCC for the purchase and sale of marine fuel. Fourth, and finally, CMA CGM (a party to the BIMCO Bunker Terms 2018, and indeed, the party

---

[44] *Besser v. Weyler*, 284 F.3d 665, 672 n.7 (5th Cir. 2002) (quoting *Sedco, Inc. v. Petroleos Mexicanos Mexican National Oil Co.*, 767 F.2d 1140, 1144 (5th Cir.1985)).
[45] *Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.*, 866 F.3d 709, 712 (5th Cir. 2017); see also *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 339 (5th Cir. 2004).
[46] *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 339 (5th Cir.2004).
[47] Exhibit "A", The GCC CMA CGM Amended BIMCO Bunker Terms 2018, §24(b).
[48] *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 903 (5th Cir. 2005).

that proposed the BIMCO Bunker Terms 2018 with the express notation that arbitration was "very very important" to it) is not an American citizen, as established in its Complaint herein.

For these reasons, the New York SMA Arbitration Agreement clearly falls under the Convention, and the Convention requires arbitration of CMA CGM's claims.[49] Because the Arbitration Agreement falls under the Convention, the Court should compel arbitration and dismiss this action.

**2.  <u>Upon compelling arbitration, this Court should dismiss this action</u>**

The Fifth Circuit "encourages district courts to dismiss cases with nothing but arbitrable issues because staying the action serves no purpose",[50] and indeed, this Court has dismissed cases where "all of the issues raised in the district court must be submitted to arbitration."[51] Here, it is indisputable that all of CMA CGM's claims in the above-captioned civil action are subject to New York SMA Arbitration, such that venue and jurisdiction are proper before the arbitration panel only, and dismissal is appropriate for improper venue under Rule 12(b)(3) and for lack of subject matter jurisdiction under Rule 12(b)(1).[52] Under these circumstances, GCC respectfully requests that the Court dismiss this action.

**3.  <u>Alternatively, upon compelling arbitration, the Court should stay all proceedings in this action</u>**

At the Court's discretion, while the arbitration is pending, this matter should be stayed. Specifically, under 9 U.S.C. § 3, which applies in Convention cases under 9 U.S.C. §§ 206 and

---

[49] *Hearthwood II Condo Owners Ass'n, Inc. v. Certain Underwriters at Lloyd's, London*, No. CV H-23-454, 2023 WL 6371031, at *3 (S.D. Tex. June 27, 2023).

[50] *Armstrong v. Assocs. Intern. Holdings Corp.*, 242 F. App'x 955, 959 (5th Cir. 2007).

[51] *Abugeith v. Flowers Foods, Inc.*, No. 17-2934, 2018 WL 2222191, at *4 (S.D. Tex. May 15, 2018) (Lake, J.).

[52] *Mem'l Hermann Health Sys. v. Blue Cross Blue Shield of Texas*, No. 17-2661, 2017 WL 5593523, at *4 (S.D. Tex. Nov. 17, 2017) (Lake, J.).

208, a federal district court must stay litigation if a party to the dispute demonstrates that there is

an arbitration agreement in place that governs the dispute. It provides, again, as follows:

> If any suit . . . be brought . . . upon any issue referable to arbitration under an
> agreement in writing for such arbitration, the court in which said suit is pending,
> upon being satisfied that the issue involved in such suit or proceedings is referable
> to arbitration under such an agreement, shall on application of one of the parties
> stay the trial of the action until such arbitration has been had . . . .[53]

Under the express terms of the New York SMA Arbitration Agreement at issue here, this

dispute must be resolved in arbitration.

An application for arbitration by either party under Section 3 of the FAA requests the

district court to refrain from further action in a suit pending arbitration, and requires the court to

determine whether there is an arbitration agreement and then whether any of the issues raised are

within the reach of that agreement. Here, CMA CGM agreed to arbitrate "[a]ny dispute arising out

of or in connection with the Contract."[54] As these issues "are within the reach of that [arbitration]

agreement, the district court has no discretion under Section 3 to deny the stay."[55] Thus, the

mandatory stay provision applies,[56] and the Court should stay this litigation pending CMA CGM

pursual of its claims in arbitration if the action is not dismissed outright.[57]

## 4.    <u>Alternatively, the Court should dismiss this action as time-barred</u>

It has long been recognized that "a provision in a contract may validly limit, between the

parties, the time for bringing an action on such contract to a period less than that prescribed in the

---

[53] 9 U.S.C. § 3.

[54] Exhibit "A", The GCC CMA CGM Amended BIMCO Bunker Terms 2018, §24(b).

[55] *Hornbeck Offshore Corp. v. Coastal Carriers Corp.*, 981 F.2d 752, 754 (5th Cir. 1993).

[56] *Waste Mgmt., Inc. v. Residuous Industriales Muliquim, S.A.*, 372 F.3d 339, 342 (5th Cir. 2004) (The Fifth Circuit
has interpreted Section 3 of the FAA to mean that "any of the parties to the suit can apply to the court for a
mandatory stay, and the court must grant the stay if the claim at issue is indeed covered by
the arbitration agreement.").

[57] *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992).

general statute of limitations, provided that the shorter period itself shall be a reasonable period",[58] and when a plaintiff's claims are time barred by contract or statute, the plaintiff cannot state a claim up which relief can be granted by the Court and dismissal with prejudice is appropriate.[59]

Here, and to the extent only that CMA CGM takes the opposing position that the BIMCO Bunker Terms 2018 that CMA CGM proposed does not apply to this dispute, such an allegation is denied, but should be a question for the New York SMA Arbitration panel as dictated by the United States Supreme Court.[60]

However, even if such an argument were considered and accepted by this Court, then the contract alluded to in CMA CGM's Complaint, must be the GCC Terms. The GCC Terms make clear that "any and all claims concerning the quality of the Bunkers delivered or time consumed for the entire operation, shall be submitted to the Seller in writing within thirty (30) days after delivery",[61] and that "any and all claims of the Buyer shall be time barred unless legal proceedings have been commenced at the competent court set forth in Section 16 hereof and served within 12 (twelve) months from the date of delivery of the Bunkers."[62] By CMA CGM's own acknowledgement certain of its claims were time barred before notice was ever provided to GCC, but even if notice had been timely given, which is denied, by CMA CGM's own pleadings, the marine fuel at issue was purchased and delivered between March and June 2023, such that the above-captioned civil action was time barred well before the instant Complaint was ever filed on 20 March 2025.

---

[58] *Order of United Commercial Travelers of Am. v. Wolfe*, 331 U.S. 586, 608, 67 S. Ct. 1355, 91 L.Ed. 1687 (1947); see also *Vincent v. Comerica Bank*, No. H–05–2302, 2006 WL 1295494, at *4 (S.D. Tex. May 10, 2006) (enforcing a contractually shortened limitations period).
[59] *Stringham v. Titsworth*, 88 F. App'x 7, 8 (5th Cir. 2004).
[60] *Buckeye*, 546 U.S. at 446; *Prima Paint*, 388 U.S. 395; *Baugh*, 2020 WL 2771251, at *3.
[61] Exhibit "B, GCC Terms, §11.2.
[62] *Id*. at §11.5.

It is, therefore, evident from the pleadings that CMA CGM has failed to state a claim upon which relief can be granted, and it is appropriate for this action to be dismissed, with prejudice.

## CONCLUSION

In sum, and for the reasons set forth above, GCC respectfully moves this Court to compel CMA CGM to New York SMA Arbitration pursuant to the BIMCO Bunker Terms 2018 and dismiss this action because venue and subject matter jurisdiction are not properly before the Court, or at the very least stay these proceedings, on the grounds that CMA CGM must arbitrate its purported claims against GCC in New York SMA Arbitration if it wishes to continue pursuing the same.

In the alternative only, GCC respectfully moves this Court to dismiss this action as it is evident from CMA CGM's Complaint that its claims against GCC are time-barred such that it has not and cannot state a claim upon which relief can be granted.

Respectfully submitted,

*/s/ Meredith W. Blanque*
Aaron B. Greenbaum, attorney-in-charge
(SDTX - Federal ID No. 2023921, TX #24110938)
Meredith W. Blanque, of counsel
(SDTX – Federal ID No. 3882128, LA #32346)
PUSATERI, JOHNSTON, GUILLOT & GREENBAUM
1100 Poydras Street, Suite 2250
New Orleans, LA 70163
Telephone: (504) 620-2500
Facsimile: (504) 620-2510
Aaron.Greenbaum@pjgglaw.com
Meredith.Blanque@pjgglaw.com
**ATTORNEYS FOR GCC SUPPLY & TRADING LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above pleading has been served upon all counsel of record, either by hand delivery, facsimile transmission, electronic transmission (e-mail), or by placing same in the United States mail, properly addressed and postage prepaid, on this 30th day of April, 2025.

*/s/   Meredith W. Blanque*